UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BURT DANIELS,

    Plaintiff,

v.

ALINA SHAW,

    Defendant.

Case No. C18-5101 RBL-TLF

REPORT AND RECOMMENDATION

Noted for **September 13, 2019**

This suit under 42 U.S.C. § 1983 has been referred to Magistrate Judge Theresa L. Fricke. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). Pending before the Court are Plaintiff Burt Daniel's (Dkt. 23) and Defendant Alina Shaw's (Dkt. 32) motions for summary judgment. After considering the parties' arguments and factual declarations, the Court recommends that defendant's motion for summary judgment be granted and plaintiff's motion for summary judgment be denied.

I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff Burt Daniels has been civilly committed as a sexually violent predator since March 25, 2003, at the state of Washington's Special Commitment Center (SCC). Dkt. 36, Declaration of Jennifer Ritchie, at 1, and Ex. 1, Order of Commitment: Dkt. 36-1, at 1. During his commitment, he has received treatment for his diagnosed sexual sadism disorder, antisocial personality disorder, and cannabis use disorder, with the aim of reducing his potential to offend and eventually rendering him eligible for conditional or unconditional release. Dkt. 36, Ex. 2: Dkt. 36-2, at 13-15; Dkt. 34, Declaration of Dr. Alina Shaw, at 3.

Defendant Dr. Alina Shaw was plaintiff's assigned therapist and case manager from November 2016 to January 2019. Dkt. 34, at 2. As part of plaintiff's overall treatment regime, defendant authored regular treatment plans for plaintiff, in which defendant reviewed plaintiff's past annual reviews, prior treatment plans, individual and group progress notes, observation and room inspection notes, and Washington Department of Corrections discovery records. *Id.* In these treatment plans, defendant's task was to assess plaintiff's progress over time in managing thoughts, feelings, attitudes and behaviors associated with plaintiff's risk of reoffending. *Id.* at 3.

A treatment plan is one component of a resident's clinical progress and informs how a resident may be advanced through the phases of treatment to eventual "community transition." Dkt. 35, Declaration of Dr. Elena Lopez, SCC Chief of Resident Treatment, at 5. Each resident's Senior Clinical Team, which includes the resident's case manager, ultimately decides whether to advance a resident through the phases of treatment. *Id.* at 4-5. If a resident's condition improves with treatment during progress through the phases, the SCC's Chief Executive Officer has the authority to grant the resident the ability to petition for an order of conditional or unconditional release from Superior Court. Rev. Code Wash. § 71.09.090; Dkt. 32, at 16; Dkt. 31, Declaration of Joshua P. Weir, Ex. C: Dkt. 31-1, Notice of Authorization to Petition for Conditional Release to Less Restrictive Alternative, at 28. However, a treatment plan is not a prescription of tasks that lead in mechanical sequence to an individual's transition to release. Dkt. 35 at 5.

Defendant Shaw wrote plaintiff's January 2018 "Core Sex Offense Treatment Plan." Dkt. 33, Second Declaration of Joshua P. Weir, at 2, and Ex. B: Dkt. 33-2. In drafting this treatment plan, she reviewed plaintiff's records, including those of his current self-reports and past offending behavior, and consulted with her group co-facilitators and her direct supervisor. Dkt. 34 at 2. The treatment plan broadly assessed plaintiff's mental and social condition and assigned

him goals in his further treatment. *Id.* The plan identified plaintiff's "dynamic risk factors" ("deviant sexual interests and hostility toward women") and encouraged plaintiff to continue treatment in line with addressing those risks. Dkt. 33-2 at 2-7.

As part of a long-term goal of maximizing plaintiff's receptiveness to treatment, the treatment plan included a focus on increased transparency regarding his actual sexual interests, habits, and desires. Dkt. 33-2, at 6. Defendant wrote that plaintiff was guarded about sharing more than vague and formulaically glib statements about his current sexual interests or experiences in therapy, and that defendant had recently "encouraged [him] to open up," though plaintiff had not been receptive to the suggestion. *Id.* at 1-2. The treatment plan noted that by way of response, plaintiff had merely provided defendant with a positive 2004 report from a previous treatment provider. *Id.* at 2.

In connection with the discussion on plaintiff's transparency, the treatment plan acknowledged that plaintiff accepts responsibility for six adjudicated rapes during treatment sessions and that plaintiff is willing to discuss those rapes as "evidence of old patterns he has overcome." Dkt. 33-2 at 2. The report went on to add the following two sentences: "However, [Mr. Daniels] does not acknowledge or take responsibility for non-adjudicated or dismissed charges, such as the one he committed approximately 1972 at the age of 17, or the rape he committed while on parole between 1976 and 1978." *Id.* Plaintiff, who has consistently resisted claims that he engaged in any sexual wrongdoing beyond the six rapes for which he was convicted, claims that these statements supply the basis for this § 1983 complaint.

Prior to the January 2018 treatment plan, plaintiff had been granted permission to petition for conditional release as of May 26, 2017 by former SCC CEO Bill Van Hook. Dkt. 31-1, 28. The treatment plan notes how, by the time of writing, plaintiff's counsel had been advocating for

REPORT AND RECOMMENDATION - 3

plaintiff's petition and negotiating conditions on plaintiff that would ensure the safety of the community. Dkt. 33-2, 5. Defendant's notes in the plan indicate that although plaintiff preferred the prospect of unconditional release, he was not opposed to conditional release to a less restrictive alternative (LRA) to commitment at the SCC. *Id.* Plaintiff's LRA Order was issued January 4, 2019, and plaintiff was conditionally released on or about February 6, 2019. Dkt. 31-1, Conditional Release Order, 25; Dkt. 38 at 1.

Meanwhile, shortly after the publication of defendant's January 2018 treatment plan, plaintiff filed a proposed complaint with this Court on February 9, 2018. Dkt. 1. In the complaint (Dkt. 6), plaintiff alleged that defendant's two statements referring to unadjudicated and alleged offenses in Plaintiff's past were false and inaccurate, violating multiple constitutional rights under 42 U.S.C. § 1983 regarding the duration of his confinement, the conditions of his treatment and confinement, defamation, and racial abuse. Dkt. 6 at 3. Discovery in this case was completed on November 30, 2018, after which both parties filed these motions for summary judgment. Dkt. 23; Dkt. 32.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is supported "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.* at 255. Yet the Court is not allowed to weigh evidence or decide credibility. *Id*. If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015).

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

Unless plaintiff makes a two-part showing, qualified immunity shields government officials from liability. The plaintiff must show both: the official(s) violated a federal statutory or constitutional right, and—at the time of the alleged act or failure to act there was clearly established law that defined the contours of the federal right objectively putting the official(s) on notice—i.e., every reasonable official would understand that what they are doing is unlawful. *Escondido v. Emmons,* 139 S.Ct. 500, 503 (2019); *District of Columbia v. Wesby,* 138 S.Ct. 577, 589 (2018). When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff

with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both (1) Whether it would be clear to a reasonable officer that their conduct was unlawful under the circumstances they confronted, and (2) Whether the defendant's conduct violated a constitutional right," then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

### B. Conditional Release

Claims that necessarily imply the invalidity of confinement, whether civil or criminal, are not cognizable under 42 U.S.C. § 1983, according to the doctrine laid out by *Heck v. Humphrey,* 512 U.S. 477 (2010). "Under *Heck*, a § 1983 action seeking damages for unconstitutional conviction or confinement cannot be pursued unless the underlying criminal case has been dismissed or reversed in favor of the criminal defendant." *Hust v. Wyoming,* 372 Fed. Appx. 708, 710 (9th Cir. 2010).

Plaintiff argues that defendant interfered with and prolonged plaintiff's process of release from detention, because of the inclusion of allegedly inaccurate statements in the treatment plan concerning sexual acts for which he was not convicted. Dkt. 25, Brief in Support of Plaintiff's Motion for Summary Judgment, at 1-4. Plaintiff claims that these statements either prevented him from applying for conditional or unconditional release or reduced his chances of approval for release. *Id.* Plaintiff's motion for summary judgment seeks damages for this alleged injury. Dkt. 23. Yet this portion of Plaintiff's claims necessarily implies the invalidity of his detention for treatment and is therefore not cognizable under § 1983. In the absence of a cognizable claim for damages, the Court recommends that plaintiff's motion for summary judgment be denied and defendant's cross-motion be granted on this issue.

C. Defamation-Plus Claim

Plaintiff strongly objects to the wording of the treatment plan, which he rejects as not only inaccurate, but false and defamatory slander on the part of defendant. Dkt. 6 at 2. However, defamation or other reputational damage alone does not constitute a cause of action under 42 U.S.C. § 1983. *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006). Rather, plaintiffs who sue for reputational damage under § 1983 must satisfy the requirements of "defamation-plus" or "stigma-plus": (1) "an allegation of injury to a plaintiff's reputation from defamation" and (2) "an allegation of injury to a recognizable property or liberty interest." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 444 (9th Cir. 2010); *American Consumer Pub. Ass'n, Inc. v. Margosian*, 349 F.3d 1122, 1125-26 (9th Cir. 2003).

If there is an injury to a plaintiff's reputation, then the plaintiff must establish either that the injury to reputation was inflicted in connection with a federally protected right; or that the injury to reputation caused the denial of a federally protected right. *Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999). To establish defamation at the threshold, the Court must determine whether a reasonable factfinder could conclude that the statements in question imply an assertion of objective fact. *Crowe*, 608 F.3d at 443. This determination must examine the statements (2) in their broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work; (2) in their specific context, analyzing the content of the statements and the expectations of the audience for whom the statements were made; and (3) as to whether they are sufficiently factual to be susceptible of being proved true or false. *Id.* (summarizing the test outlined in *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995)).

The evidence before the Court, viewed in the context of the complete treatment plan authored by defendant, would not allow a reasonable fact-finder to conclude that defendant made any statements from which there is an implied assertion of objective fact, i.e. that plaintiff had actually committed the two offenses. Although it refers to two alleged rapes as those "he committed," the treatment plan as a whole shows that these are examples of incidents about which plaintiff is typically not forthcoming in treatment, whether or not they occurred in fact. Dkt. 33-2. The plan was written for treatment providers who generally agreed on setting a goal for plaintiff to increase his transparency regarding his sexual history and sexual interests in multiple areas. *Id.*; *see* Dkt. 35 at 8; Dkt. 31-1, Declaration of Dr. Brian W. Judd, at 30-34. This extended not only to these past alleged offenses but to his masturbation habits, his preferred patterns of attraction, his changing sexual fantasies, and his intent when socializing with female SCC staff or visitors. Dkt. 33-2 at 3.

In their natural context of plaintiff's treatment plan, a reasonable fact-finder could not find that the statements contained an objective assertion of fact. Plaintiff bases his claim only on the statements outside of their context and has not provided any other facts that would allow an inference that these two statements about alleged offenses in the 1970s implied that plaintiff had in fact committed those crimes. Therefore, even though plaintiff contests the accuracy of the statements, he has not met his burden of presenting admissible evidence to show there is a genuine dispute of material fact concerning any element of a defamation-plus claim, since these statements cannot constitute defamation that actually injured the plaintiff's reputation. The Court recommends that summary judgment should be granted in defendant's favor on this issue.

## D. Constitutional Adequacy of Treatment

Plaintiff asserts that these statements violated his Fourteenth Amendment right to fair treatment as a civilly committed sexually violent predator. Due process guarantees civilly-committed sex offenders access to mental health treatment that provides them a realistic opportunity to either be cured or to improve their mental conditions to a point where they may be released. *Youngberg v. Romeo*, 457 U.S. 307, 319–22 (1982); *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000); *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980). However, a claim that mental health care is unconstitutional must overcome a deference to the presumptively valid judgment of health care providers. *Youngberg*, 457 U.S. at 323. A plaintiff must show a substantial departure from accepted professional judgment, practice, or standards in order to state a claim. *Id.*

Undisputed declarations of fact describe SCC's treatment program and the treatment that plaintiff received during his years of commitment. Dkts. 31, 33-36. The record cannot support plaintiff's assertion that his treatment failed to meet constitutional standards, as the wording of his treatment plan had no bearing on plaintiff's opportunity to be cured or treated for his mental disorders. Rather, plaintiff's treatment providers repeatedly emphasized transparency as part of plaintiff's treatment over his years of participation in treatment programs at SCC. *See, e.g.*, Dkt. 31, Declaration of Elizabeth M. Bain, at 21, 25-27; Dkt. 31-1 at 32-33; Dkt. 35 at 8; Dkt. 36-6, Community Treatment Plan by Dr. James Manley, at 5.

Plaintiff had been guarded and unwilling to admit more vulnerable or challenging thoughts, but his treatment providers noted his progress over time in taking responsibility for his actions and avoiding minimizing or defensive behaviors. Dkt. 31-1 at 32-33; Dkt. 33-2, 2; Dkt. 35 at 7. An emphasis on cultivating transparency in sexual offenders is within the bounds of

professional judgment. *See* Dkt. 35 at 5. By 2017, plaintiff had already progressed in treatment to the point of petitioning for release to an LRA, so his claim that the January 2018 treatment plan prevented him from receiving effective treatment is entirely unsupported—especially since, as of this date, he has already been released. Dkt. 31-1 at 28; Dkt. 38. The Court recommends denying plaintiff's motion regarding the constitutionality of his mental health and sex offender treatment and granting defendant's cross motion on this issue.

### E. Due Process and Equal Protection Claims

Due process under the Fourteenth Amendment does not permit civilly committed individuals to be subjected to conditions that amount to punishment, within the bounds of professional judgment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hydrick v. Hunter*, 500 F.3d 978, 997 (9th Cir. 2007), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009). To constitute punishment, "(1) that [government action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the government action must be to punish the detainee." *Demery v. Arpaio*, 378 F.3d 1020, 1029-30 (9th Cir. 2004) (citing *Bell*, 441 U.S. at 538). To establish a violation of equal protection, the defendant's offending behavior must have been motivated by a racially discriminatory purpose. *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004).

Plaintiff argues these Fourteenth Amendment claims in the abstract, if at all. His complaint alleges that defendant "used the civil process R.C.W. chapter 71.09" to cause plaintiff "personal suffering, emotional stress and hardship." Dkt. 6 at 2. He has identified the statute that governs the organization of the SCC, but beyond that this allegation contains no facts. Plaintiff also alleges that his treatment plan "is written in a pattern and practice of racial profiling abuse, false reporting, outrageous behavior and slander." *Id.*

Plaintiff's motion for summary judgment and accompanying declarations did not include additional facts or evidence, only more vague and conclusory statements, which cannot substantiate his allegations of racist mistreatment or any other violations that might be cognizable § 1983 claims. *See*, Dkts. 23-26. Conclusory statements of law cannot meet plaintiff's burden of presenting admissible evidence to support his claims. *See, e.g., Lew v. Kona Hospital*, 754 F.2d 1420, 1424 (9th Cir. 1985); *Lujan v. Wildlife Fed.*, 497 U.S. 871, 888-89 (1990). The Court recommends denying plaintiff's punitive conditions and equal protection claims, as well as granting defendant's motion on this issue.

### F. State Law Claims

Plaintiff's claims may sound in state tort law as negligence or defamation claims, but to the extent that plaintiff's complaint may include any state law causes of action, the Court should decline to exercise pendant jurisdiction in the absence of viable federal claims. In addition, plaintiff's tortious state law claims would be subject to the filing requirements of the Revised Code of Washington § 4.92.100. Plaintiff is required to wait sixty days after first presenting such claims to the Washington office of risk management division, before bringing any of his claims against "the state, or against any state officer, employee, or volunteer, acting in such capacity, for damages arising out of tortious conduct." Rev. Code Wash. § 4.92.110.

Just as in state court, the Court must dismiss such actions for lack of subject matter jurisdiction, because plaintiff did not comply with state statutory procedure. *Minnis v. State of Washington*, 675 Fed. App'x. 728, 729 (9th Cir. 2017). Plaintiff has not alleged or demonstrated compliance with this requirement. Accordingly, the Court recommends that any state law claims be dismissed for lack of subject matter jurisdiction.

## In Forma Pauperis Status On Appeal

The Court must also decide whether plaintiff's *in forma pauperis* status should continue on appeal. *See* 28 U.S.C. §1915(a)(3) ("an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith"). The Court must determine whether appeal is frivolous or malicious, or whether it fails to state a claim on which relief may be granted. *See* 28 U.S.C. §1915(e)(2)(B)(i)&(ii).

While the Court was not persuaded on the merits of plaintiff's claim, there is no evidence that his appeal would be frivolous or taken in bad faith. Accordingly, the Court recommends that *in forma pauperis* status should continue on appeal.

## III. CONCLUSION

Based on the above, the Court recommends that plaintiff's motion for summary judgment be DENIED and defendants' motion for summary judgment be GRANTED. Plaintiff's case should be dismissed with prejudice on the substantive merits as to all claims for damages and equitable relief, because he fails to show there is any genuine dispute of material fact as to any element of each of his constitutional claims. It follows that the defendant is entitled to qualified immunity on all of plaintiff's claims for damages. *Escondido v. Emmons*, 139 S.Ct. 500, 503 (2019); *Bonivert v. City of Clarkston*, 883 F.3d 865, 871-72 (9th Cir. 2018).

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **September 13, 2019**, as noted in the caption.

Dated this 23rd day of August, 2019.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge